# UNITED STATES COURT OF APPEALS FIFTH CIRCUIT

_____

### Case No. 23-30356

_____

### Joseph Ash; Justin Bolton; Matthew Crawford,
### Plaintiffs – Appellants

### v.

### Flowers Foods, Incorporated; Flowers Bak
### Company of Baton Rouge, L.L.C.,
### Defendants – Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA, ALEXANDRIA DIVISION
CIVIL ACTION NUMBER 1:21-CV-03566

_____

## APPELLANTS' PETITION FOR REHEARING EN BANC
## ON BEHALF OF JOSEPH ASH, JUSTIN BOLTON
## and MATTHEW CRAWFORD

_____

### COUNSEL FOR PLAINTIFF/APPELLANTS

STEVEN G. DURIO (#05230)
D. PATRICK KEATING (#14417)
RANDY M. GUIDRY (#26909)
**Durio, McGoffin, Stagg & Guidry**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
Phone: (337) 233-0300

TRAVIS J. BROUSSARD (#33036)
130 South Audubon Boulevard, Suite 109
Post Office Box 82238
Lafayette, LA 70598-2238
Phone: (337) 316-8135

RYAN M. GOUDELOCKE (#30525)
130 South Audubon Boulevard, Suite 105
Lafayette, LA   70503
Phone:  (337) 345-1985

THOMAS M. HAYES, IV (#28600)
**Hammonds, Sills, Adkins, Guice,**
  **Noah, & Perkins L.L.P.**
1881 Hudson Circle
Monroe, LA 71201-3537
Phone:   (318) 387-2422

**No. 23-30356**

***Ash v. Flowers Foods, Inc., et al***

## CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. Plaintiff Appellant, Joseph Ash, a 38 year old individual formerly employed by Flowers Baking Company of Baton Rouge, LLC;

2. Plaintiff Appellant, Justin Bolton, a 46 year old individual formerly employed by Flowers Baking Company of Baton Rouge, LLC; and

3. Plaintiff Appellant, Mathew Crawford, a 43 year old individual formerly employed by Flowers Baking Company of Baton Rouge, LLC.

/s/ Steven G. Durio
Steven G. Durio, Counsel for
Plaintiff /Appellants, Joseph Ash,
Justin Bolton and Matthew Crawford

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ............................................................................ iii

GROUNDS FOR REHEARING EN BANC ........................................................1

ISSUES PRESENTED....................................................................................2

COURSE OF PROCEEDINGS ..........................................................................3

ARGUMENT ..............................................................................................3

  ERRORS OF FACT.......................................................................................3

    I.  These Local Designated Route Distributors Drove Intrastate........................3

    II. Local Designated Route Distributors Cannot Drive Interstate.......................5

  ERRORS OF LAW........................................................................................6

    III. Intrastate Transportation "Within The Meaning of The MCA". .................6

    IV. The Opinion Applied the Wrong Standard. ...................................................8

    V. The Goods Were No Longer In Interstate Transportation. ...........................10

    VI. Local Designated Route Distributors in the Fifth Circuit Have Never Been Exempt.......................................................................................................13

    VII. The Opinion Will Split This Circuit From the Sixth, Seventh and Potentially Others......................................................................................................15

    VIII. The Opinion Repudiates Textual Analysis Now Required By *Hewitt* and *Helix*. ....................................................................................................17

CONCLUSION..........................................................................................18

CERTIFICATE OF SERVICE ..........................................................................v

CERTIFICATE OF COMPLIANCE ...................................................................vi

ATTACHMENT 1 - OPINION ........................................................................vii

# TABLE OF AUTHORITIES

## Cases

*Allen v. Coil Tubing Services*, *LLC*, 755 F.3d 279, 283 (5th Cir. 2014) .. 1, 8, 15, 19

*Amaya v. NOYPI Movers, L.L.C.,* 741 F. App'x 203, 204-6, (5th Cir. 2018)... 1, 6, 8

*Atlantic Coast Line R. Co. v. Standard Oil Co.,* 275 U. S. 257 (1927) .................10

*Baird v. Wagoner Transp. Co.,* 425 F.2d 407 (6th Cir. 1970)............. 1, 2, 10, 16, 18

*Barefoot v. Mid-America Dairymen, Inc.*, 16 F.3d 1216 *3 (5th Cir. 1994)...........11

*Boutell v. Walling*, 327 U.S. 463 ...................................................... 10, 18

*Deloach v. Crowley's, Inc.,* 128 F.2d 378 (5 Cir. 1942) .........................................13

*Galbreath v. Gulf Oil*, 413 F.2d 941 at 947 (5th Cir. 1969)...................................11

*Garcia v. Swift & Company,* 276 F.Supp. 625 (S.D. Tex. 10/27/1967).................13

*Jax Beer Company v. Redfern*, 124 F.2d 172 (5th Cir. 1941) ............................1, 13

*Kimball v. Goodyear Tire and Rubber Company*, 504 F.Supp. 544 (E.D. Tx. 1980) .................................................................................................................13

*Kline v. Wirtz*, 373 F.2d 281 (5th Cir. 2/17/1967)...................................................13

*Mitchell v. Livingston Oil Company, Inc.*, 256 F.2d 757 (5th Cir. 1958)...............13

*Orbetta v Dairyland USA*, 2023 WL 6386921 (S.D. NY, September 30, 2023) ....17

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S.695,707-08 ................................6

*Shaw v. Stix Trucking, LLC,* 2020 WL 7011766 (W.D. Tex. 10/20/2020) .............13

*Shew v. Southland Corp.*, 370 F.2d 376 (5th Cir. 1966)..........................................14

*Siller v. L & F Distributors, Ltd.*, 109 F.3d 765 (5th Cir. 1997) ........................14

*Songer v. Dillon Res., Inc.,* 618 F.3d 467, 472 (5th Cir. 2010)......... 1, 3, 6, 7, 8, 14

*United States v. American Trucking Ass'ns*., 310 U.S. 534, 553 (U.S. 1940). i, 6, 10

*Walker Oil Co. v. Hudson Oil Co. of Mo*., 414 F.2d 588 (5th Cir. 1969) .............15

## Statutes

49 U.S.C. 31502 ...................................................................................................6

Fair Labor Standards Act ............................................................ 1, 2, 3, 6, 10, 18

**Other Authorities**

"Application of the Federal Motor Carrier Safety Regulations", 46 Fed. Reg. 37902-02, (July 23, 1981) (codified at 49 CFR pt. 390)................................................17

MC-48, 71 MCC 17 (1957) ............................................................... 10, 11, 16, 17

**Rules**

5th Cir. R. 28.2.1........................................................................................... i

**Regulations**

"Application of the Federal Motor Carrier Safety Regulations", 46 Fed. Reg. 37902-02, (July 23, 1981) (codified at 49 CFR pt. 390, Interstate Commerce) (the "DOT Notice").......................................................................................................5

29 CFR 782.2(2)(a)...........................................................................................4

29 CFR 782.2(d) ...............................................................................................7

29 CFR 782.3(b) ...............................................................................................7

29 CFR 782.7(a)...............................................................................................14

29 CFR 782.7(b)(2)(i-iii) .................................................. 10, 11, 13, 14, 16, 17, 18

49 CFR pt. 390.5T..........................................................................................5, 18

## GROUNDS FOR REHEARING EN BANC

This matter involves issues of exceptional importance because 1) the Opinion conflicts with statutory and regulatory texts, 2) many other Fifth Circuit appellate and district court opinions,[1] 3) splits from the Sixth[2] and Seventh[3] Circuits, and 4) defies textual analysis for MCA exemptions now required by *Helix Energy Solutions Group, Inc. v. Hewitt,* 143 S.Ct. 677 (U.S. 2023). The Opinion ignores the determinative statutory and regulatory standards, used in its recent MCA exemption cases such as *Amaya v. NOYPI Movers, L.L.C.,* 741 F. App'x 203, 204-6, (5th Cir. 2018), *Allen v. Coil Tubing Services*, *LLC*, 755 F.3d 279, 283 (5th Cir. 2014), and *Songer v. Dillon Res., Inc.,* 618 F.3d 467, 472 (5th Cir. 2010). The Opinion rebukes consistent Fifth Circuit holdings since *Jax Beer Company v. Redfern*, 124 F.2d 172 (5th Cir. 1941)[4] that local designated route distributors are not covered by the MCA exemption. The Opinion invokes "atextual theories"[5] to transmogrify actual intrastate distribution into fictional interstate transportation and "rejects" the "textual directive[s]"[6]for FLSA exemptions now "dictated"[7] by *Helix*.

---

[1] See pp. 6-9, 13-14, *infra.*
[2] *Baird v. Wagoner Transp. Co.,* 425 F.2d 407 (6ᵗʰ Cir. 1970).
[3] *Goldberg v. Faber Industries, Inc*., 291 F.2d 232 (7th Cir. 1961).
[4] And other cases at pp. 13-14, *infra*.
[5] *Hewitt v. Helix Energy Solutions Group, Incorporated*, 15 F.4th 289 (5th Cir. 2021) at 299, Ho concurring.
[6] *Helix* at 690, discussed at pp. 17-18, *infra.*
[7] See Memorandum Ruling, p. 12, at note 11 (ROA.3325).

# ISSUES PRESENTED

1.    Whether drivers only in local wholly intrastate distribution, who can never drive in or affect the safety of prior interstate transportation, can be covered by the MCA exemption.

2.    Whether explicit ICC and regulatory standards in the context of the Motor Carrier Act ("MCA") exemption to the Fair Labor Standards Act ("FLSA"), which distinguish the end of interstate transportation from the beginning of intrastate distribution, can be "rejected" by this Circuit.

3.    Whether this Court should abrogate its consistent treatment of local designated route drivers as not covered by the MCA exemption.

4.    Whether, after *Helix*, "atextual theories",[8] historically used only in dicta or other contexts, can now be applied to expand MCA jurisdiction, according to Flowers subjective intent, despite Sixth and Seventh Circuit decisions in *Goldberg* and *Baird*.

---

[8] *Hewitt* at 299, Ho concurring.

## COURSE OF PROCEEDINGS

Flowers moved for summary judgment contending under the MCA exemption that plaintiff distributors had no FLSA overtime claims. The trial court granted judgment for Flowers. The Panel affirmed.

## ARGUMENT

### ERRORS OF FACT

### I. THESE LOCAL DESIGNATED ROUTE DISTRIBUTORS DROVE INTRASTATE

The district court correctly found "Plaintiffs' delivery duties did not require interstate travel".[9] Plaintiffs drove only "specially assigned and designated"[10] wholly intrastate distribution routes.[11] Bolton's "circular" route covered 47 stops and 130 miles,[12] as illustrated by Figure 1, p. 4., *infra*.[13] Plaintiffs' uncontradicted Declarations say they never crossed state lines and could never be reasonably expected to do so.[14]

---

[9] Memorandum Ruling, ROA.3315 (Rec. Doc. 62, p. 2).
[10] See *Goldberg* at 234 as discussed at p. 15, *infra*. MCA driver cases distinguish "designated" or "dedicated" from randomly or "indiscriminately" assigned, for the purpose of assessing the likelihood of a drivers potential for driving in interstate transportation. See *Goldberg* at 234 and compare *Songer* at 470, 475.
[11] See Declaration of Justin Bolton (ROA.2236-2244), Declaration of Joseph Ash (ROA.2245-2255), Declaration of Matthew Crawford (ROA.2256-2265).
[12] See Declaration of Justin Bolton (ROA.2236-2244).
[13] This illustration is taken from the description of Bolton's territory in his employment agreement. See ROA.1467. The district court found, "[A]ll three Plaintiffs performed identical job functions." ROA.3315. Bolton's route is therefore illustrative in all material respects.
[14] See note 11, *supra*.



Figure 1

Since they did not drive interstate, Plaintiffs were not exempted by the MCA.[15]

---

[15] *Songer* at 472-475 citing 29 CFR 782.2(2)(a) and "Application of the Federal Motor Carrier Safety Regulations", 46 Fed. Reg. 37902-02, (July 23, 1981) (codified at 49 CFR pt. 390, Interstate

## II.  Local Designated Route Distributors Cannot Drive Interstate.

These local designated daily routes were exclusive, prohibiting distributors from working anywhere else.[16] Because of route demands, Plaintiffs could never drive the prior intrastate transportation *from* the bakery *to* the terminal, nor the original interstate transportation to the bakery. [17] See Figure 2.[18]



Figure 2

Since they could never be reasonably expected to drive interstate, Plaintiffs were not exempted by the MCA.[19]

Commerce) (the "DOT Notice"). 49 CFR pt. 390.5T "Interstate Commerce". Selected text at p. 16, *infra*.

[16] See, e.g., Bolton Agreement, ROA.1447-1473.

[17]  ROA.2236-2244, ROA.2245-2255, and ROA.2256-2265.

[18] This illustration is based on Flowers' Declaration at ROA.1494-1495,  ¶¶ 20-21.

[19] See note 15, *supra*.

As in *Amaya*, discussed below at p, 8, *infra*, "applying both the summary judgment standard of review to the evidence and the relevant burden for establishing an MCA exemption" (*Amaya* at 207), the Opinion should have recognized that Flowers failed to meet its factual burden of proof.

**ERRORS OF LAW**

## III.   INTRASTATE TRANSPORTATION "WITHIN THE MEANING OF THE MCA".

MCA jurisdiction over employees affects only those whose individual activities directly affect the safety of interstate transportation.[20] A distributor is subject to the MCA only if he drives in or could reasonably be expected to drive in interstate transportation, *within the meaning of the MCA*.[21] 49 U.S.C. 31502 defines interstate transportation, (1) between a place in a state and a place in another state, (2) between places in the same state through another state. Because these distributors do not drive across state lines or carry goods still in interstate transportation, they do not drive in interstate transportation or affect its safety "*within the meaning of the MCA*".[22]

---

[20] *Amaya* at 206. See also *United States v. American Trucking Ass'ns*., 310 U.S. 534, 553 (U.S. 1940); see also, *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S.695,707-08.
[21] *Songer* at 474, citing 29 CFR 782.2(b)(3).
[22] This phrase appears not less than 19 times in 29 CFR 782 emphasizing the critical difference between MCA and FLSA jurisdiction.

In *Songer,* which quotes 29 CFR 782.2(d): "[T]he activities of drivers, … in connection with transportation which is not in interstate … commerce *within the meaning of the Motor Carrier Act* provides no basis for exemption under § 13B1 of the Fair Labor Standards Act". *Songer* also cites 29 CFR 782.3(b): [A] driver's work "directly affects safety of operation *within the meaning of § 204 of the Motor Carrier Act* … whenever he drives a motor vehicle in interstate or foreign commerce *within the meaning of that act*". The same regulation goes on to state, "He is not exempt if his job never involves transportation in interstate or foreign commerce *within the meaning of the Motor Carrier Act*."

Unlike the drivers in *Songer,* these instant distributors are described perfectly in *Songer's* regulatory references. Flowers' Vice President of Market Sales, admits plaintiffs receive product at the terminal only after interstate transportation to the bakery and intrastate transportation from bakery to terminal.[23] The plaintiffs' Declarations make clear they couldn't possibly drive in interstate transportation.[24] For purposes of the MCA exemption, these legal standards have been adopted in the regulations of the DOT, the DOL, and this Fifth Circuit itself.[25]

---

[23] ROA.1494-1495, ¶¶ 20-23; ROA.1499.
[24] ROA.2236-2244; ROA.2245-2255; ROA.2256-2265.
[25] See pp. 8-9, 13-14, *infra*.

## IV. THE OPINION APPLIED THE WRONG STANDARD.

The Opinion therefore erred as a matter of law by applying the wrong legal standard. Flowers relied solely upon the non-MCA derived legal formulation that intrastate transportation is sometimes interstate if the goods were previously driven by others across state lines.[26] Under that legal fiction, the Opinion mischaracterized the activities of the plaintiff intrastate drivers based on the activities of the other, preceding, interstate drivers. Under the MCA exemption, which must be determined based only on the activities of the plaintiffs themselves, this is fundamentally erroneous.[27]

MCA exemption cases like *Amaya, Alan,* and *Songer* show that the Fifth Circuit uses an employee's actual or potential crossing of state lines to determine the interstate transportation whose safety an MCA employee must directly affect. They describe interstate transportation, not by goods in commerce, but in statutory terms as "loads … transported across state lines" (*Songer* at 471); or "driver's trips … made across state lines" (*Allen* at 283, 286); or "jobs … [which] required interstate travel" or "to travel interstate" (*Amaya* at 206-207), that a driver may "directly affect" to apply the MCA exemption. In *Songer* and *Allen* the MCA exemption

---

[26] These formulations are derived from non-MCA cases, the genealogy of which is traced in Appellants' Initial Brief, Rec. Doc. 42-1 at p. 1, note 1.
[27] See notes 20-21, *supra*.

applied because interstate routes were regular duties assigned indiscriminately. In *Amaya,* where no evidence linked loaders, individually or as a class, to their employer's interstate trips, the exemption did not apply. When it comes to the MCA exemption, this Court does not use goods in flow of commerce or practical continuity as the metric but adheres to the statutory text to define interstate transportation "*within the meaning of the MCA*".

The Opinion obviated this lack of critical evidence by redefining transportation, not "within the meaning of the MCA", but according to the "atextual" formulation of "goods in the flow" or "practical continuity" of interstate commerce. (Op.4). These formulations, derived from cases involving jurisdiction over motor carriers themselves,[28] not their employees, much less the MCA exemption, lack the precision required to discriminate between one driver and another required by the MCA exemption. This resulted in denial of overtime, despite plaintiffs' wholly intrastate activities, because of the activities of the preceding drivers. The Opinion therefore also erred as a matter of law. (Op.4).

---

[28] E.g., *Central Freight Lines v. I.C.C.,* 899 F.2d 413 (5th Cir. 1990).

## V. THE GOODS WERE NO LONGER IN INTERSTATE TRANSPORTATION.

Despite out-of-state origin of a minority of the goods, because of original ICC decisions now incorporated into regulations, those goods were no longer in interstate commerce when the distributors began their routes:

> The Interstate Commerce Commission, after years of extensive hearings (1955-1957), issued industry-wide guidelines to indicate when the transportation of petroleum and petroleum products by motor carriers within a single state is interstate commerce. See Ex Parte No. MC-48, 71 MCC 17 (1957). The criteria used in Ex Parte No. MC-48, were incorporated into an interpretive Bulletin of the Wage and Hour Division, United States Department of Labor outlining the scope of the 13(b)(1) exemption to the FLSA. Code of Federal Regulations 782.7(b)(2).

*Baird v. Wagoner Transp. Co.*, 425 F.2d 407, 410 (6th Cir. 1970). By these authorities, any prior Interstate transportation by others ended before distributors' routes begin. 29 CFR 782.7(b)(2)(i-iii).

The "years of extensive hearings" from which MC-48, 71 MCC 17 (1957) ("MC-48") resulted, and the incorporation of MC-48 into § 782.7(b)(2), entitle them both to "great weight".[29] MC-48 and 29 CFR 782.7(b)(2)(i-iii) ("29 CFR") criteria show interstate transportation ended before intrastate distribution began.[30]

---

[29] *Baird* at 411 citing *Boutell v. Walling*, 327 U.S. 463, 471.

[30] MC-48 was an investigation into "shipment, storage and distribution", p. 18, which concluded "distribution methods … are similar", p. 19, when "products are commingled" and "there is no perceptible effort … to perfect a through movement by means of any type of through-rate arrangement." p. 21. Citing *Atlantic Coast Line R. Co. v. Standard Oil Co.,* 275 U. S. 257 (1927)

All Declarations show that MC-48 and 29 CFR apply literally.[31] The out of state goods were shipped to an in-state bakery, not a place beyond a terminal distribution point. There they commingled with a far larger quantity goods manufactured in-state.[32] Now began the second wholly intrastate transportation of the commingled goods from the Baton Rouge bakery to the terminal distribution point in Alexandria. When it reached the terminal, this now commingled bulk shipment was processed into loads by route. After that, deliverymen purchased their load, and processed it again as required for distribution by separating, sorting, allocating to "cut to order", and reloading sequentially for each customer destination.[33] The last; the plaintiff distributors' "transportation in furtherance of distribution within the single state" was only then *specifically arranged*". [34] At that point, despite the out of state origin of some goods, according to the clear, definite

---

and other cases in which products were "stored for convenient distribution" at "bulk stations" and "distributed … daily" and concluded "the nature of the commerce … was intrastate." p. 26. The factors eventually incorporated into the CFR were "basically sufficient to establish that the continuity of transportation has been broken, that initial shipments have come to rest, and that the interstate journey has ceased". p. 29. As 29 CFR 782.7(b)(2)(i-iii), the regulation sets forth a general rule for distinguishing the end of interstate transportation and the beginning of intrastate distribution.

[31] ROA.2236-2244, ROA.2245-2255, and ROA.2256-2265, ¶¶ 9-14, respectively; ROA.1494, ¶ 20 to ROA.1495, ¶ 23.

[32]This manufacturing and commingling with local goods stop might itself be a processing sufficient to interrupt interstate transportation.MC-48 at 21, 24, 29. For this reason, many cases, including, for example, *Galbreath v. Gulf Oil*, 413 F.2d 941 at 947 (5th Cir. 1969) and *Barefoot v. Mid-America Dairymen, Inc.*, 16 F.3d 1216 *3 (5th Cir. 1994) are careful to note that there was in those cases no commingling with intrastate goods.

[33] 29 CFR 782.7(b)(2)(iii) (emphasis added).

[34] *Id*.

and explicit terms of 782.7(b)(2)(i-iii), the interstate transportation had ceased, and intrastate distribution began.[35]

The Opinion's assertion that 782.7(b)(i-iii) "was already rejected" in *Central Freight Lines*, presumes authority it no longer had after *Helix*, *infra*. It is also inaccurate; *Central* merely says: "The ICC neither distinguished nor applied the petroleum products test in this case" and only determined that the ICC had properly applied other tests in its non-MCA context.[36]

The Opinion also misconstrued the regulation by omitting the critical reference to "specifically" before "arranged". In context, the omitted "specifically" clearly (Op.8) refers to the specifics already identified in the regulation, i.e., the type, quantity and destination of the goods,[37] not the mere securing of vehicles. This omission by the Opinion radically changed the meaning so that the regulation no longer fit the facts. Read properly, however, the regulation fits the facts of this case as a glove on a hand. This refusal to apply the statutory and regulatory texts was another clear error of law.

---

[35] *Id.*
[36] *Central Freight Lines* at 421, "We think the standard adopted in *Armstrong* and *Matlack,* and applied in this case, is not unreasonable …"
[37] 29 C.F.R. 782.7(b)(2) specifies, "specific order for a specific quantity of a given product … to a specific destination."

## VI. LOCAL DESIGNATED ROUTE DISTRIBUTORS IN THE FIFTH CIRCUIT HAVE NEVER BEEN EXEMPT.

The Fifth Circuit consistently refuses to apply the MCA exemption to local designated route delivery drivers. In 1941, *Jax Beer* held "local delivery truck drivers" … "work of delivering beer … not interstate in character"; *Deloach v. Crowley's, Inc.,* 128 F.2d 378 (5 Cir. 1942), (drivers "who reloaded" interstate shipments and "drove them making deliveries to … customers"); *Mitchell v. Livingston Oil Company, Inc*., 256 F.2d 757 (5th Cir. 1958), (out-of-state products … before sale to a Florida distributor who delivered it … throughout the state); *Kline v. Wirtz*, 373 F.2d 281 (5th Cir. 2/17/1967), ("local delivery drivers" for whom "the 'interstate' movement ceased when the [product] was delivered to the employer's … processing area [and] cut to order before delivery to customers").

District courts in the Fifth Circuit have followed and also apply 29 CFR. *Garcia v. Swift & Company,* 276 F.Supp. 625 (S.D. Tex. 10/27/1967) ("The same reasoning as in MC 48 [787.2(b)] applies [to] a truck driver … engaged in … transportation … in a single State from a storage terminal of commodities … not exempted by § 213(b) of the [MC] Act."); *Kimball v. Goodyear Tire and Rubber Company*, 504 F.Supp. 544 (E.D. Tx. 1980), (drivers "who drove purely intrastate segments [which were] not a part of interstate commerce" because "the products involved clearly came to rest … by reason of … processing."); *Shaw v. Stix Trucking, LLC,* 2020 WL 7011766 (W.D. Tex. 10/20/2020) ("truck drivers … [hauling] to and

from various locations solely within the state of Texas … who never transported … across state lines … not under the MCA") [noting 29 CFR 782.7(a) in support]. Some of them like *Garcia* and *Shaw* have explicitly followed the regulation. The Opinion, however, ignored all of these cases.

Instead, the Opinion's citations do not involve local designated route delivery drivers. In *Shew v. Southland Corp.*, 370 F.2d 376 (5th Cir. 1966), Shew only drove from the Dallas office, where it received out of state shipments, to Odessa and Midland. Shew only "transshipped"[38] *to* those terminals, *not from* them. The products were still in interstate transportation until Shew's leg had ended at the terminal distribution point.[39] In *Siller v. L & F Distributors, Ltd.*, 109 F.3d 765 (5th Cir. 1997), plaintiff drivers were "former and current *long-haul truck drivers*" who "drove…products *from* the AB warehouse in Houston *to* L&F's warehouses in Harlingen, Alice, McAllen and Laredo, Texas."[40] In neither *Siller* nor *Shew*, was the end point of "interstate transportation" reached. In *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472 (5th Cir 2010), "no driver had a dedicated route", "and any

---

[38] *Shew* at 378.
[39] *Shew* at 381 recognized 29 CFR 782.7(b)(2) had just been issued, but found it inapplicable to the stipulated facts. *Shew satisfied none of the criteria* of 29 CFR 782.7(b)(2). *Shew* therefore drove in *interstate transportation*, subject to the MCA. Plaintiffs *satisfy all those criteria* of 29 CFR 782.7(b)(2) showing that they drove in *intrastate distribution*. *Shew* supports the instant claims of plaintiffs by negative implication.
[40] *Siller* at *1 (765).

driver could have been assigned to an interstate trip".[41] In *Allen* the employees drove to oil wells to provide materials and services. Seven percent of the employers' trips "required these employees to drive across state lines" and trips were "assigned indiscriminately".[42] *Central Freight Lines v. I.C.C.,* 899 F.2d 413 (5th Cir. 1990) and *Walker Oil Co. v. Hudson Oil Co. of Mo*., 414 F.2d 588 (5th Cir. 1969) are not even MCA exemption cases. Nevertheless, the Opinion erroneously relied on dicta from *Central Freight Line* (Op.8) made in an entirely different context.[43] While "goods in commerce" and "practical continuity" are useful in describing motor carrier's transportation, they lack the precision necessary to discriminate between the activities of specific individuals which is crucial to determining the application of an exemption based on individual activity.

## VII.   THE OPINION WILL SPLIT THIS CIRCUIT FROM THE SIXTH, SEVENTH AND POTENTIALLY OTHERS.

*Goldberg v. Faber Industries, Inc.*, 291 F.2d 232 (7th Cir. 1961) recognized drivers who drove "specially assigned and designated routes"[44] … "none of [whom] crossed state lines" were not driving… in interstate commerce *as that term is used in the [Motor Carrier Act]* ."[45] (emphasis added)

---

[41] At 473.
[42] *Allen* at 282.
[43] See text at note 36, *supra*.
[44] *Goldberg* at 234.
[45] *Id*.

*Goldberg* was explicitly followed in *Baird v. Wagoner Transp. Co.*, 425 F.2d 407 (6th Cir. 1970) which applied both MC-48 and § 782.7(b)(2)(i-iii). As in *Baird,* Flowers' local bakery ships commingled goods, including a small interstate portion, in bulk to its terminal storage.[46] As in *Baird,* the terminal employees then allocate specific quantities of various products to routes, not the ultimate destinations. As in *Baird*, the route deliverymen purchase the aggregated products allocated to their route, then reallocate and "specifically arrange" by sequentially loading specific quantities of specific products for each specific Flowers' customer destination, so that "transportation in the furtherance of this distribution within the single State"[47] can begin. Consequently, as in *Baird* "the Appellee drivers were not engaged in 'interstate [transportation] as defined by the MCA and Ex Parte MC-48" and are not subject to the exemption.[48]

Both *Goldberg* and *Baird* have been approved and were incorporated into a DOT notice of interpretation which states:

> Jurisdiction does not attach if there is no possibility of the individual driver doing interstate driving or if the possibility of interstate driving is remote. '*Baird v. Wagoner*' and '*Goldberg v. Faber*'… **If jurisdiction is claimed over a driver who has not driven in interstate commerce, evidence must be presented that the carrier has engaged in interstate commerce and that the driver could**

---

[46] See *Baird* at 411 (6th Cir. 1970).
[47] 29 CFR 782.7(b)(2).
[48] *Baird* at 412.

**reasonably have been expected to make one of the carrier's interstate runs.** (emphasis added)

"Application of the Federal Motor Carrier Safety Regulations", 46 Fed. Reg. 37902-02, (July 23, 1981) (codified at 49 CFR pt. 390) (the "DOT Notice"). In 2016, one of the related plaintiffs were also advised by the DOT that "since his truck does not cross the state line" he is not required to have a U.S. DOT number.[49]

Cases in other circuits continue to apply MC-48 as incorporated by 782.7. In *Orbetta v Dairyland USA*, 2023 WL 6386921 (S.D. NY, September 30, 2023) the court noted that the recent 2005 letter opinion noted in the Opinion[50] "supplemented" but was not "superceding" *13. *Orbetta* also applied 782.7, noting it had recently been discussed and distinguished by the Second Circuit in an MCA exemption case in 2002.[51] *Orbetta* shows the Opinion erred in subjugating the regulation to a letter opinion.

## VIII. THE OPINION REPUDIATES TEXTUAL ANALYSIS NOW REQUIRED BY *HEWITT* AND *HELIX*.

Under *Helix* the "textual directive[s]"[52] of the MCA itself, and the applicable regulations such as MC-48, 29 CFR 782.7(b)(2)(i-iii), the 1981 DOT Notice cited

---

[49] ROA.2451.
[50] Opinion, p. 7.
[51] *Orbetta* at *13.
[52] *Helix* at 690.

above, and 49 CFR pt. 390.5T, cannot "[be] overcome"[53]much less "rejected" "A court cannot ignore them altogether"[54] as the lower court did, or simply critique them, as the Opinion does. "[I]t should go without saying that we are governed by the text of the FLSA and its implementing regulations" (*Hewitt* at 298). This clear convergence of these "textual directives" in the statute and both the DOT and the DOL regulations must be given "great weight"[55] and can neither be overcome by "atextual theories",[56] nor ignored, without directly repudiating both this Court's *Hewitt* decision and the Supreme Court's mandate in *Helix*.

This case presents a clear choice; between the amorphous non-MCA formulations which justify the change of intrastate to interstate commerce in other contexts, or the textually-based analysis of MCA exemptions as required by *Hewitt* and *Helix*.

## CONCLUSION

The Opinion leads to the absurd conclusion, despite 29 CFR 782.7(b)(2)(i-iii), that locally distributed products are never in intrastate transportation. Under this Opinion, the MCA exemption completely swallows FLSA protection for drivers, and eliminates the regulatory distinction between the end of interstate transportation

---

[53] *Id.*
[54] *Hewitt* at 292.
[55] *Baird* at 411 citing *Boutell v. Walling*, 327 U.S. 463, 471.
[56] *Hewitt* at 299, Ho concurring.

and the beginning of intrastate distribution. This obliterates all of the Fifth Circuit jurisprudence protecting Local Designated Route Distributors.

This case presents opportunities 1) for this Circuit to clarify its jurisprudence, without overruling any of it, 2) to maintain its consistent jurisprudence protecting local designated route distributors, 3) to clarify its use of formulations from other non-MCA contexts, 4) to prohibit their use as "atextual theories" which "impliedly"[57] expand the MCA exemption, and 5) to advance its increasingly "textual" analyses in *Amaya, Allen, Songer* and *Hewitt* as affirmed in *Helix*. The Fifth Circuit should grant rehearing *en banc*.[58]

Respectfully submitted,

/s/ Steven G. Durio

STEVEN G. DURIO (#05230)
D. PATRICK KEATING (#14417)
RANDY M. GUIDRY (#26909)
**Durio, McGoffin, Stagg & Guidry**
220 Heymann Boulevard (70503)
Post Office Box 51308
Lafayette, LA   70505-1308
Phone: (337) 233-0300
Fax:     (337) 233-0694
Email: durio@dmsfirm.com
          rick@dmsfirm.com
          randy@dmsfirm.com

RYAN M. GOUDELOCKE (#30525)
130 South Audubon Blvd., Suite 105
Lafayette, LA   70503
Phone:  (337) 345-1985
Fax:      (337) 233-9095
Email:  ryan@goudelocke.law

THOMAS M. HAYES, IV (#28600)
**Hammonds, Sills, Adkins, Guice,**
   **Noah & Perkins L.L.P.**
1881 Hudson Circle
Monroe, LA 71201-3537
Phone:  (318) 387-2422
Fax:      (318) 388-5809
Email:    thayes4@hamsil.com

---

[57] *Allen* at 292, note 10, Dennis J., dissenting.
[58] The Opinion fails to cite or discuss *Amaya, Allen, Songer, Hewitt* and *Helix*.

TRAVIS J. BROUSSARD (#33036)
130 South Audubon Boulevard, Ste. 109
Post Office Box 82238
Lafayette, LA 70598-2238
Phone: (337) 316-8135
Fax:    (337) 233-9095
Email:  travis.broussard@live.com

**COUNSEL FOR PLAINTIFF/APPELLANTS, JOSEPH ASH, JUSTIN BOLTON AND MATTHEW CRAWFORD**

# CERTIFICATE OF SERVICE

I hereby certify a copy of the above and foregoing APPELLANTS' PETITION FOR REHEARING EN BANC was filed electronically using the CM/ECF system. Notice of this filing will be sent to the following counsel by operation of the CM/ECF electronic filing system:

Traci Leigh Lovitt
Jones Day
250 Vesey Street
New York, NY 10281
Phone: (212) 326-7830
Email: tlovitt@jonesday.com

Matthew J. Rubenstein
Jones Day
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
Phone: (612) 217-8846
Email: mrubenstein@jonesday.com

Amanda Kelly Rice
Jones Day
150 W. Jefferson Ave., Suite 2100
Detroit, MI 48226
Phone: (313) 230-7926
Email: arice@jonesday.com

Matthew W. Lampe
Jones Day
250 Vesey Street
New York, NY 10281
Phone: (212) 326-8338
Email: mwlampe@jonesday.com

Margaret Santen
Ogletree, Deakins, Nash,
   Smoak & Stewart, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28273
Phone: (704) 405-3119
Email: maggie.santen@ogletree.com

Kevin P. Hishta
Ogletree, Deakins, Nash
   Smoak & Stewart, P.C.
191 Peachtree Street, N.E.
Atlanta, GA 30303
Phone: (404) 870-1733
Email: kevin.hishta@ogletree.com

Lafayette, Louisiana, this 9th day of April, 2024.

    /s/ Steven G. Durio
    STEVEN G. DURIO

# CERTIFICATE OF COMPLIANCE

1.     This document complies with Fed. R. App. P. 35(b)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,861 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20124) in Times New Roman 14-point font.

Lafayette, Louisiana, this 9th day of April, 2024.

/s/ Steven G. Durio
Steven G. Durio, Counsel for
Plaintiff/Appellants, Joseph Ash,
Justin Bolton and Matthew Crawford

# ATTACHMENT 1
# OPINION

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 28, 2024

Lyle W. Cayce
Clerk

No. 23-30356

Joseph Ash; Justin Bolton; Matthew Crawford,

*Plaintiffs—Appellants*,

*versus*

Flowers Foods, Incorporated; Flowers Baking Company
of Baton Rouge, L.L.C.,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:21-CV-3566

Before Wiener, Haynes, and Higginson, *Circuit Judges*.

Wiener, *Circuit Judge*:[*]

Plaintiffs-Appellants Joseph Ash, Justin Bolton, and Matthew Crawford ("Plaintiffs") appeal the district court's grant of summary judgment in favor of Defendants-Appellees Flowers Foods, Incorporated and Flowers Baking Company of Baton Rouge, L.L.C. (collectively, "Flowers"). For the following reasons, we AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-30356

## I. Background

Flowers manufactures and markets baked goods using a "direct store delivery" system. Under this business model, Flowers divides its market into geographic territories and sells the distribution rights to stores within those territories to independent distributors. Distributors order, purchase, and deliver products directly to customers. Because of the limited shelf life of bread products, distributors determine the necessary quantity of products for each of their customers only one week before the date of delivery. The products are then manufactured at Flowers' bakeries, some of which are located outside of Louisiana, before being shipped nightly to warehouses in Alexandria and Natchitoches. Six to twelve hours after arrival at the warehouses, the products are picked up by the distributor that ordered them and are then delivered to customers. Distributors typically drive company trucks, but occasionally use their personal vehicles for "pull-up" restocking.

Distributors are paid on a commission basis. Pursuant to a Distributor Agreement signed by each employee, Flowers deducts warehouse rent, administrative fees, and "shrink" and "stale" costs from employees' wages. "Shrink costs" refers to lost sales for bread that is never scanned out of inventory. "Stale costs" are profits lost when bread is unsold by a certain date.

Plaintiffs are three former Flowers distributors. They contend that Flowers intentionally misclassified them as independent contractors to avoid paying them overtime, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631, *et seq.* They also assert that Flowers took illegal deductions from their paychecks in violation of the LWPA. The district court

No. 23-30356

granted summary judgment to Flowers on all of Plaintiffs' claims. Plaintiffs appeal.[1]

## II. Standard of Review

On appeal, we review a district court's grant of summary judgment de novo. *United States ex rel. Schweizer v. Canon, Inc.*, 9 F.4th 269, 273 (5th Cir. 2021). Summary judgment is proper when the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts and reasonable inferences are construed in favor of the nonmovant. *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).

## III. Discussion

### A. The FLSA

The FLSA requires that employers pay employees who work in excess of forty hours per week one-and-a-half times their regular hourly rate. 29 U.S.C. § 207(a)(1). There are, however, several exceptions to this rule. *See* 29 U.S.C. § 213. Exemptions to the FLSA are affirmative defenses that employers must demonstrate by a preponderance of the evidence. *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580–81 (5th Cir. 2013).

The Motor Carrier Act ("MCA") is one such exemption. The right to overtime does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and

---

[1] Plaintiffs do not appeal the district court's grant of summary judgment on their claim for overtime violations under the LWPA.

maximum hours of service pursuant to section 31502 of title 49." 29 U.S.C.
§ 213(b)(1). That section, in turn, provides that the Secretary may only
regulate "motor carriers" that participate in interstate transportation. 49
U.S.C. §§ 31501(1), 31502(b); 29 C.F.R. § 782.2(a). The MCA defines
interstate transportation as, *inter alia*, movement "between a place in . . . a
State and a place in another State; [or] a State and another place in the same
State through another State." 49 U.S.C. § 13501(1). Transportation, in turn,
includes "services related to that movement, including arranging for, receipt,
delivery, elevation, transfer in transit, refrigeration, icing, ventilation,
storage, handling, packing, unpacking, and interchange of passengers and
property." 49 U.S.C. § 13102(23)(B).

In this case the district court held that the MCA precluded Plaintiffs'
claim for overtime under the FLSA. On appeal, Plaintiffs complain that they
did not engage in transportation "in interstate or foreign commerce within
the meaning of the Motor Carrier Act." 29 C.F.R. § 782.2(a). Plaintiffs
picked up products at warehouses in Louisiana and delivered them to
customers in Louisiana. They contend that they only engaged in *intrastate*
transportation, putting them outside of the MCA's purview.

However, this circuit has applied the MCA not only to the "actual
transport of goods across state lines" but also to the "intrastate transport of
goods in the flow of interstate commerce." *Siller v. L & F Distribs., Ltd.*, 109
F.3d 765, 1997 WL 114907, at *1 (5th Cir. 1997) (per curiam). A "carrier is
engaged in interstate commerce when transporting goods . . . originating in
transit from beyond [the state in question] . . . even though the route of a
particular carrier is wholly within one state." *Id.* (quoting *Merchants Fast
Motor Lines, Inc. v. I.C.C.*, 528 F.2d 1042, 1044 (5th Cir. 1976) (calling this
rule "elemental")). Whether transportation "between two points in a single
state is interstate or intrastate depends on the shipment's 'essential
character.'" *Id.* at *2 (quoting *Merchants Fast Motor Lines, Inc. v. I.C.C.*, 5

No. 23-30356

F.3d 911, 917 (5th Cir. 1993)). Essential character, in turn, refers to "the shipper's fixed and persisting intent at the time of shipment." *Id.* The "totality of all of the facts and circumstances eventually determines whether a shipper has the requisite intent to move goods continuously in interstate commerce." *Id.* (citing *Texas v. United States*, 866 F.2d 1546, 1560 (5th Cir. 1989)).

Flowers had such an intent here. Plaintiffs ordered products based on sales history and projections for particular stores. The bread products were baked accordingly, before being shipped into Louisiana. Within hours of the products' arrival at the warehouses in Louisiana, they were picked up by Plaintiffs and transported to the customers. Even if Flowers did not know at the time of production which customers would ultimately receive which goods, it knew that the products were shipped into Louisiana for distribution to Louisiana customers.[2] It is clear that Flowers had the intention, when it shipped the specially-ordered products from its out-of-state facilities, that the products would reach Louisiana customers.

Plaintiffs contend that the flow of interstate commerce was severed once the products arrived at the warehouses, where Plaintiffs had to arrange for delivery by sorting and loading inventory onto their trucks. But the MCA expressly includes "arranging for . . . delivery" as part of its definition of "transportation," along with "storage, handling, packing, [and] unpacking." 29 U.S.C. § 13102(23)(B). The Interstate Commerce Commission

---

[2] "[T]he shipper need not know the exact identity of particular consumers in order to intend that the goods move continuously in interstate commerce." *Central Freight Lines v. I.C.C.*, 899 F.2d 413, 421 (5th Cir. 1990); *see also* Policy Statement, 8 I.C.C.2d 470, 473–74, 1992 WL 122949, at *2 (Apr. 27, 1992) (explaining that a shipper's "lack of knowledge of the specific, ultimate destination . . . at the time the shipment leaves its out-of-State origin" is insufficient to "establish a break in that continuity that would change the interstate character of the subsequent transportation").

("I.C.C.")[3] has noted that when, as here, a "warehouse serves only as temporary storage to permit orderly and convenient transfer of goods in the course of what the shipper intends to be a continuous movement to destination, the continuity of the movement is not broken at the warehouse." Policy Statement, 8 I.C.C.2d at 472–73. That Plaintiffs sorted and loaded their ordered products does not sever the causal chain of intent. *See Siller*, 109 F.3d at *2. Plaintiffs did not engage in the type of processing that might do so. *See Central Freight Lines*, 899 F.2d at 415 n.1, 422 (suggesting that combining in-state and out-of-state products to create something new would sever chain); *Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir. 1967) (per curiam) (holding that because a "substantial part of the . . . meat was boned, trimmed, and cut to order," the "District Court had ample basis to conclude that the 'interstate' movement ceased when the meat was delivered to Employer's storage and processing area"). The temporary stop at the warehouse was merely intended to "facilitate the interstate movement." *See Siller*, 109 F.3d at *3.

More broadly, Plaintiffs contend that the district court was wrong to apply the "totality of the circumstances" shipper-intent test, but instead should have used a three-part test devised by the I.C.C. in the 1950s to determine whether their role constituted interstate transportation. The factors under that framework which could preclude intrastate transportation from being considered interstate are "(1) that there is no specific order destined for a specific destination; (2) that the terminal storage is a distribution point or local marketing facility; and (3) that transportation from

---

[3] The I.C.C. regulated motor carrier safety prior to the Secretary of Transportation. *See* I.C.C. Termination Act of 1995, Pub. L. No. 104–88, 109 Stat. 803, 804 (1995).

hub to spoke is arranged only after sale or allocation from storage." *Central Freight Lines*, 899 F.2d at 421. However, this argument is unavailing.

First, this court has already rejected that test under similar facts. *See id.* Second, while the three-factor test is incorporated into Department of Labor ("DOL") regulations, *see* 29 C.F.R. § 782.7(b)(2), the DOL recognizes that the Department of Transportation ("DOT") has "supplemented" the specific criteria in situations such as this involving "motor traffic moving from warehouses or similar facilities to points in the same State after or preceding a movement from another State." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act, 2005 WL 330602, at *2 (Jan. 11, 2005) (citation omitted). In those circumstances, the DOT now uses the "fixed and persisting transportation intent" test. *Id.*[4]

Plaintiffs advocate a "textualist" reading of the statute, when employees who do not enter other states simply do not travel in interstate commerce. They point to *Encino Motorcars, LLC v. Navarro*, in which the Supreme Court held that exemptions under the FLSA must be given a "fair reading." 138 S. Ct. 1134, 1142 (2018). We have characterized this "fair reading" requirement as contrasting with the "narrow interpretation previously espoused by this and other circuits." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018). Plaintiffs fail to explain why the "totality of the circumstances" analysis is not a "fair reading." *See Encino*, 138 S. Ct. at 1142. The district court's analysis of the FLSA and the MCA faithfully centers the statutes' texts in determining their applicability.

---

[4] "Because DOT is the final administrative authority for the MCA, its interpretation of its jurisdiction is controlling." Opinion Letter, 2005 WL 330602, at *2 n.5 (citing *Martin v. Coyne Int'l Enters., Inc.*, 966 F.2d 61, 63–64 (2d Cir. 1992)).

No. 23-30356

Further, even if the three-part test were applicable, Plaintiffs would still be out of luck because there was a specific customer order being filled at the time of shipment. *See Central Freight Lines*, 899 F.2d at 421. Plaintiffs placed orders for particular stores before the bread was baked and delivered to the warehouses. Additionally, transportation of the products from the "hub" of the warehouses to the "spokes" of the stores was arranged before the items arrived at the storage facility. *See id.* Plaintiffs were notified when their ordered products arrived at the warehouse and picked up their ordered products five days per week. In sum, the three-part test has been all but abandoned in situations such as this, and, even if it were to apply, it would not cut in favor of Plaintiffs. *See Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 306 n.2 (11th Cir. 2009) (per curiam) ("We are . . . in accord with other circuits that have held that this standard has been refined, if not phased out, in favor of the more general consideration that draws a fixed and persisting intent from all of the facts and circumstances surrounding the transportation." (internal quotation marks and citation omitted)). Any way you slice it, the MCA exempts Plaintiffs from the FLSA.

Plaintiffs alternatively assert that the Technical Corrections Act ("TCA") spares them from the MCA's exemption. The TCA recognizes that drivers working with "motor vehicles weighing 10,000 pounds or less" are not covered by the MCA. Technical Corrections Act of 2008, Pub. L. No. 110–244, 122 Stat. 1572, 1620 (June 6, 2008). Flowers distributors do the majority of their work with company trucks weighing more than 10,000 pounds. Although Plaintiffs occasionally used their personal vehicles, they submitted no evidence as to those cars' weights. Although Plaintiffs insist that their personal cars were "at least inferentially" less than 10,000 pounds, they cannot create an issue of fact without evidence of the "actual [weight of] the vehicles the plaintiffs drove." *See Rychorewicz v. Welltec, Inc.*, 768 F. App'x 252, 256 (5th Cir. 2019) (per curiam) (finding that website links stating

the weight of particular makes and models of vehicles were insufficient evidence of weight within the context of the TCA without the cars' VIN numbers). It might be the employer's burden to establish the applicability of the MCA exemption, but it is the employee's burden to show the weight of the vehicles under the TCA. *Carley*, 890 F.3d at 580; *Rychorewicz*, 768 F. App'x at 257. Plaintiffs failed to meet this burden and establish a dispute of fact that would preclude summary judgment.

The MCA applies to exempt Plaintiffs from the FLSA's overtime requirements, even though they only drive goods within Louisiana, because they play a part in achieving the shipper's fixed intent to move goods between states. The district court did not err in granting summary judgment in favor of Flowers on this claim.

## B. The LWPA[5]

Flowers regularly deducted warehouse rent, administrative fees, and shrink and stale costs from Plaintiffs' wages. Plaintiffs claim that these are illegal fines under the LWPA, which states that an employer may not "assess any fines against his employees or deduct any sum as fines from their wages." La. Stat. Ann. § 23:635. "A fine, within the meaning of [section] 23:635, is a pecuniary penalty imposed for the violation of some law, rule or regulation." *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 637 (5th Cir. 2001) (quoting *Brown v. Navarre Chevrolet, Inc.*, 610 So.2d 165, 170 (La. Ct. App. 1992)). The deductions taken by Flowers were not penalties associated with violating any sort of rule, but were instead a policy related to wage payment— one which was expressly authorized by Plaintiffs through their Distribution

---

[5] Flowers contends that Plaintiffs' LWPA claim is untimely. Because we dispose of that claim on its merits, we decline to reach the issue of timeliness.

Agreements. *See Samson*, 242 F.3d at 637–38. As the district correctly court held, those deductions do not violate the LWPA.

## C. Supplemental Jurisdiction

Finally, Plaintiffs assert that the district court improperly retained supplemental jurisdiction over their LWPA claim after dismissing their FLSA claim. According to Plaintiffs, the district court should have declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) and dismissed the LWPA claims without prejudice instead of with prejudice. The statute provides that a district court "*may* decline to exercise supplemental jurisdiction" if, *inter alia*, (a) "the claim raises a novel or complex issue of State law," (b) "the district court has dismissed all claims over which it has original jurisdiction," or (c) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c) (emphasis added). This circuit also considers the common law factors of "judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas County*, 641 F.3d 155, 159 (5th Cir. 2011) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). We review a district court's decision to retain jurisdiction over a state law claim for abuse of discretion. *Batiste v. Island Records Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *see also Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999) (describing the district court's "wide discretion" in this arena).

The district court did not abuse its discretion in exercising supplemental jurisdiction over Plaintiffs' LWPA claim. The issue was "fully developed and ripe for disposition on summary judgment." *See Mendoza v. Murphy*, 532 F.3d 342, 347 (5th Cir. 2008). The district court was familiar with the merits of the case, which had been pending for more than two years. *See id.* Discovery had closed, and the case was less than three months away from trial. *See id.* Further, the LWPA claim presented "no novel or especially

No. 23-30356

unusual questions." *See Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citation omitted). Finally—and most importantly—Plaintiffs failed to request a remand from the district court in the event that it ruled for Flowers on the federal claim. That failure renders Plaintiffs' instant challenge waived. *See Powers v. United States*, 783 F.3d 570, 576–77 (5th Cir. 2015) (quoting *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1000–01 (9th Cir. 1997) (en banc) ("[W]hile Article III jurisdiction must be considered *sua sponte*, review of the discretionary aspect to supplemental jurisdiction under § 1367(c) is waived unless raised in the district court.")).

## IV. Conclusion

The district court did not err in granting summary judgment in favor of Flowers, nor in retaining jurisdiction over Plaintiffs' state law claim. That judgment is AFFIRMED.